at all. So Mr. Cooke, whenever you're ready. Thank you, Your Honor. I'm James Cooke. I represent the estate of Ibragim Todashev and our grounds for appeal are first of all that the district court erred in staying the pleadings, the staying discovery in the, based on an assumption that there was, would you keep up your voice? Yes, Your Honor. I'll get a little closer in. Our first ground is that the court erred in staying discovery where the pleadings showed, I think, very clearly that there were serious errors of fact that would have made qualified immunity impossible. I thought that your claim was, we have a number of cases in our circuit, including Chudasma, which explains that it's appropriate for a because if the complaint won't even pass the pleading stage, you shouldn't make the parties engage in discovery. I thought your argument was that once the motion for summary judgment was filed, then you should have been allowed discovery, but the magistrate judge stayed discovery. The magistrate judge stayed discovery when the last motion for summary judgment was filed, so that the case was in a posture where there was either a motion to dismiss or a motion to summary judgment as to all the claims and all the parties. However, and in any case, we believe that in this case, a quick look at the pleadings would have showed that there were serious disputes of fact in how the Mr. Todashev was killed. There were clearly issues relating to the unlawful detention. There were issues relating to the use of deadly force, and those fact issues would have precluded qualified immunity as a matter of law. Therefore, I think it was quickly obvious that this case needed to go to discovery. Let me ask you a question sort of related to discovery, but it's a little different. Given that you were not allowed to take discovery, what evidence did you try to put forward before the district court on the motions for summary judgment? For example, Mr. McFarlane's motion for summary judgment. Mr. McFarlane. What did you have and what did you put before the district court given that you were not allowed to do discovery? We had the autopsy report and we had a report of the Department of Justice Criminal Civil Rights Division, and those reports showed that the series of entry wounds were inconsistent with the description by Officer Sinelli, where the entry wounds were at the top of the head, three entry wounds to the back, two entry wounds to the upper arm that passed through the arm into the chest, and then one under the left armpit. Only one of those entry wounds would have been possible given Officer Sinelli's description of events. Was that DOJ report redacted, the one you had, or was unredacted? The DOJ report was largely unredacted, but it... Did that report come to any conclusions about the sequence of events inside the apartment that led to the shooting? The report did not find any wrongful acts, but I don't think it really... Did it describe in its view what the sequence of events was, and it referenced highly redacted but still understandable affidavits and reports by the officers, but it didn't do a forensic analysis. I think that it made a kind of a confused description of somebody moving around and possibly falling backwards or falling forwards. Was the report written against the background of the autopsy? The report adopted the entry wounds that were... In the autopsy. In the autopsy. It adopted the description of the entry wounds in the autopsy. However, I think that it remains pretty clear as a matter of common sense that if you've got someone holding something over their head, you're not going to get wounds through the upper arm that go into the chest. You're not going to get an entry wound into the top of the head, and you're not going to get three entry wounds in the back. Doesn't that theory presume the guy just stands there while he's being shot? Well, the description is that he's moving very fast, and he's moving across the floor, and at the moment the officer Sinelli says that he is preparing to ward off a blow, that is when Officer McFarland presumably steps forward from his right to fire a two sets of shots, either three and four or four and three, he's not sure. However, that is the motion. That's the moment in time when the shots are fired, and in addition to that, you have Mr. Todashev falling on the ground right in front of the front door. So he's supposedly taking a metal broomstick from next to the door, holding it over his head, running at full speed toward Officer Sinelli, and he then at that moment sustains at least three or four of these wounds, only one of which would be possible in that posture, and then ends up right next to the front door. Mr. Cook, taking all the evidence at the light most favorable to the estate, what do you say that the evidence shows? Well, the evidence shows that the, Mr. That's as to how the shooting occurred, the encounter. First of all, the evidence shows that Mr. Todashev had been arrested at gunpoint earlier. No, no, I'm talking about in the room. Yes, okay. What does it show as to the scenario? Okay. Your best case scenario. Well, the You can describe it from the evidence. At some point, there was obviously some kind of conflict in which Mr. Officer McFarland sustained a head wound. I would like to cite a case, a very recent Just tell us what the scenario is. Okay. Describe what happened. That we don't According to the evidence taken at the light most favorable to your client. Yes, Your Honor. We don't know what happened just prior to the gunshots, but we do know that the body was found next to the front door, and possibly Mr. Todashev was trying to leave the apartment. That's what Officer Cinelli, who had taken his gun out and put it back, said, well, I thought he was trying to leave, so that's why I put my gun back. And that was just prior to the shooting. So things obviously happened within seconds, but what we have because of the absence of discovery is really a negative and not a positive. We don't know what happened. We just know that the Cinelli description could not have happened. All right, Mr. Cook. Thank you very much. You've saved your time for rebuttal. Thank you, Your Honor. Mr. Fuchs. May it please the Court. Sigmund Fuchs on behalf of Special Agent McFarlane. I'm just going to jump right into the autopsy report and the evidence in this case. What's their best scenario from the evidence? The evidence is actually objective and verifiable. Mr. Todashev violently threw a table at my client's head. We have objective, verifiable evidence of that wound. We have the photographs of what my client's face looked like after the shooting. Within a matter of seconds, he ignored commands, ran into the kitchen looking for something, grabbed the red pole, and charged another officer. What does the autopsy show about the entry of the bullets? So I'll preface this by saying that although a state has the autopsy report, they never submitted it to the district court. They just submitted the Civil Rights Division report. That was it. But the autopsy report's a matter of public record, and they admit they have a copy of it. What it shows is there were seven bullet wounds, all coming from left to right, and that the first three were Todashev facing the officer. And there's also, in addition to... How do you know it was... How do we know it was the first three? So the medical examiner did a bullet trajectory analysis. That report is attached to the state attorney general's report that the estate concedes it has. The Civil Rights Division report then incorporates that analysis. And so this was what the trajectory shows. You have seven bullets coming this way. Three of them, it's not that he was holding up the javelin up here, or the red pole. What Officer Cinelli says is that he charged at him with the red pole this way, which explains why the first three shots are through the arm and one into the chest. That's consistent with what the medical examiner said. That's completely consistent with the officer's testimony. The next two shots are at a top-down trajectory, as if he's falling forward to the head and to the shoulder. And then the last two or three shots are in the back, which is what the medical examiner said was likely either twisting as Mr. Totoshev was falling and getting back up. The important thing is that given that all of the bullet wounds had the same trajectory, left to right, nothing was straight through, the medical examiner concluded that it is impossible that Totoshev was fleeing down the hall and was shot straight through in the back. Absolutely impossible given the trajectory. All right, let me assume all of that is true from your side of the case. I have never seen in all my years on the bench an unlawful, an allegedly unlawful shooting case where when a motion for summary judgment, not a motion to dismiss, a motion for summary judgment is filed by a defendant, particularly the one who fired the deadly shots, discovery is completely stayed. There's two cases, Your Honor. There's this court's decision in Garner, which was an excessive force case where there was a pre-discovery summary judgment motion and the plaintiff in that case filed a Rule 56 affidavit that did not include the statements this court requires. No, no, but see that's different. That's different because a Rule 56 D affidavit or declaration or motion is usually, not always, but usually filed when in the middle of discovery, somebody files a motion for summary judgment. Discovery is not over and you're telling the district court, I need more time. Here's what I need more time for and here's what I would find out with more time. In this case, you've got a complete stay of discovery that is not justified by any principle of law that I know of. Well, I think Your Honor mentioned that in response that because it was a qualified immunity case, the stay itself was appropriate. Garner was a pre-discovery case. There was no discovery in Garner. And in the Fifth Circuit's Mendez opinion, there was no discovery and they were both excessive force cases. You and I may just disagree about this, but when it turns from a motion to dismiss on qualified immunity grounds to summary judgment, when the movement is filing affidavits, declarations, evidence, you can't have a blanket stay of discovery. That completely subverts the adversarial process. I mean, I think if the court wants to go that way, it's going to essentially say in qualified immunity cases moving forward. You did not move for qualified immunity. You moved on Fourth Amendment reasonableness grounds. That's a merits ground. Well, our entire motion to summary judgment had argued both prongs. The whole second section was unclearly established. Once you bring in the second prong and you submit, you submitted evidence in support of your motion, did you not? Correct. How can you completely stay discovery when you are presenting evidence, you're not letting the other side do discovery, and you're talking about what happened inside of a closed apartment building where the only other possible witness is dead? Two responses. Explain that to me. One, in reflect on this court flat out recognized that pre-discovery summary judgment motions are appropriate. Tell me why it's appropriate here. It's appropriate here because the estate already has all the evidence it needs. They weren't able to depose your client. They're not entitled to a qualified immunity case. That's what the Supreme Court has said. No, no, no, that's wrong. Your answer is wrong. You're allowed to block discovery when you move for qualified immunity on the pleadings. Because your argument is the pleadings don't get you past, doesn't get the plaintiff past the qualified immunity hurdle. That's their burden and we shouldn't have to do any discovery. I agree completely with that. But once you move to summary judgment and you put on affirmative evidence that goes on beyond the pleadings, tell me what policy supports a blanket stay of discovery. I think this court's Harbert decision and Garner decision, which were both qualified immunity cases. I mean, that's why this court even said in a pre-discovery posture, the thumb is on the scale against discovery. That's this court's test. When you're a pre-discovery posture is that 12B6 motion to dismiss. On qualified immunity grounds, based on the allegations of the complaint. Correct. That's what that means. But in Harbert and Garner, they were both pre-discovery summary judgment motions. I urge the panel to look at those opinions. Tell me what's right about those. Forget their binding. Tell me what's right about those. If Mr. Torgashev had survived the shooting and he had moved for summary judgment on an unlawful shooting claim under the Fourth Amendment, under Bivens, and he had moved for summary judgment two days after filing the complaint, what would you have done? We would have filed a Rule 56. Well, we probably would have responded to it because we had this day before. You would have deposed him. If we thought we needed to. You'd be committing malpractice if you didn't depose him. And you know that. And you're precluding him from deposing the movement on the other side who he claims. And I know you have a lot of evidence on your side to say that nothing was constitutionally wrong. But you're precluding him from taking discovery. I've never heard of that. So I think, I mean, if you even look at like the Fifth Circuit's decision in Mendez, where the Fifth Circuit said in a pre-discovery posture on a motion for summary judgment, when you have all the evidence out there, even in these cases that go through discovery, you have the autopsy report, a bullet trajectory analysis, you have sworn statements from the officer, photographs from the scene. What else do they need factually? They shouldn't get discovery just because they don't believe it. Of course, that's what always happens. The fact that your witness says X doesn't mean the other side has to accept that X is true. Because every once in a while, witnesses shade the truth. And every once in a while, witnesses are not completely straight. And that's what the adversary process is for. I'm speaking only for myself. I don't want to bind my colleagues to my crazy thoughts. But you want to test through the adversarial process whether what someone has said is true or not. That doesn't seem like a crazy proposition to me. And you're telling me that in a case like this, where there is a deadly shooting, maybe with cause, inside of a closed apartment with no other witnesses, you're going to rely on the testimony of the shooter and his partner and other evidence. And you are not going to let anybody test the truth or the veracity or weight of that evidence. That makes no sense to me whatsoever. Of course, answer all of them. I think once you have objective, verifiable evidence that we have in this case, including photographs of the flipped table, what my client looked like, we know the timing of this is objectively verifiable. We have the text message that preceded the shooting. We have the 911 call. We know this all-violent episode happened in less than 120 seconds. And I think when you have that objective, verifiable evidence and the autopsy report, it is incumbent on the plaintiff to say, what else do I need factually? Not just, I don't believe the autopsy report. I don't believe these photographs. What do they need factually? And I think qualified immunity balances the thumb on the scale against discovery, which is what this court's test is, against what the plaintiff needs. The district court granted summary judgment for you, not on the ground that there wasn't any clearly established law that Mr. McFarlane violated, but on the ground that he didn't violate the Fourth Amendment at all. That's a merit determination. No, he actually, in the opinion, the district court said, this is a compelling case for qualified immunity. That's how the district court ruled. I mean, those are exact words from the district court. A compelling case for qualified immunity. Maybe I've just, if you're talking about the same language I'm talking about, then I think you might be mistaken. Page 23 of the district court's opinion. Moreover, Mark Farlane has presented a compelling argument that he did not violate Torgachev's right to be free from excessive force. Rather, he acted reasonably under the circumstances. That's a merits determination, not a qualified immunity. Determination. Okay, if I'm mistaken, I apologize to the court. He reached the merits. He could have ruled on the first prong of qualified immunity, but he did not. He went straight to the second, and he said no Fourth Amendment violation. The second prong is the clearly established prong, and we made that argument. He went to the constitutional issue, not whether or not there was clearly established law. But there, and so if the estate wanted to proceed, obviously, at this point, we found a motion for summary judgment and could have done one of two things. It could have said, here's clearly established case law, you know, overcoming this motion, or this is what we need factually. It doesn't do that. And I think if this court reverses and finds an abuse of discretion on this bare bones Rule 56D affidavit, it's going to turn Rule 56D on its head in this circuit, and I think qualified immunity. Except that this case has not only the Rule 56D issue, but a blanket stay of discovery preceding the Rule 56D request. Correct, which the stay was appropriate because we also had pending motions to dismiss. As to those defendants, absolutely. Right, and to my defendant on the other claims, correct. All right, thank you very much, Mr. Fuchs. We appreciate it. Thank you. Ms. Karinas. May it please the court, Jennifer Karinas for the United States. The estate brought just one claim against the United States, and that is a Federal Tort Claims Act claim for wrongful death. And as we argued in our brief, the estate has largely abandoned that claim against the United States by failing to mention the Federal Tort Claims Act at all in its brief. The district court granted summary judgment for the United States on the wrongful death claim for three grounds. First, that a negligence action under the FTCA for excessive force is not actionable under Florida law. And the estate has not addressed that at all. And also that under the FTCA, one cannot maintain a constitutional claim. And he does not address that either. The third ground. First, on the first ground. Yes, Your Honor. I know your procedural argument that it hasn't been presented, but on that first ground, the ground was that, as I understand it, Florida law holds that an excessive force claim has to be routed through an intentional act theory. An intentional battery. As opposed to a negligence theory. Correct. All right. But I wanted to make that clear because in the Second Amendment complaint, which is the operative complaint, there is language about negligence constitutional. Okay. So as to the excessive force of wrongful death claim premised on an intentional battery, the standard for adjudicating that, as I stated in the brief, is the same as determining excessive force under the Fourth Amendment. And the district court granted the United States motion for summary judgment because it had found that the predicate for that Federal Tort Claims Act claim, which is excessive force by Agent McFarlane, it had decided that Agent McFarlane had not used excessive force. And so chronologically, your motion for summary judgment was filed after the district court had ruled on Officer McFarlane's? That's correct. That's correct, your honor. So obviously, if there is no excessive force claim, if... That's right. And so that was the basis for our summary judgment motion. And that's the ground on which the district court granted it. And otherwise, as for the arguments on the stay of discovery and the Rule 5060 motions, I'm happy to answer more questions. We adopted... As to you... Sure. Discovery shouldn't have been stayed, right? Actually, it should have... As a blanket matter, because you had no motion to dismiss on qualified immunity grounds. So at the time that initially we filed, the defendants filed the motion to stay, we had not yet filed our motion for summary judgment. That's true. And that's why the court at that point denied the stay, because it said it would not be truly dispositive. Then after we filed our summary judgment motion, the court revisited that upon a request, I believe, of Agent McFarlane and said, now I am going to grant the stay. Because Harlow is very clear on this point. It is no defense. It is no protection to have qualified immunity on your Bivens claim if you still have to engage in discovery on an FDCA claim. So once we had a dispositive motion, the stay of discovery we submit under a controlling law was appropriate. But that only works... Again, this is only my perspective, and maybe I'm just wrong about it, but that only works if you're proceeding on qualified immunity. But if you're getting to the ultimate merits of a Fourth Amendment claim, why should discovery be stayed as a general matter for those parties who are moving for summary judgment on that? Right. I think I'm having a little bit of a disconnect here, because my understanding was qualified immunity, and again, the qualified immunity is not really my issue, but we do take the benefit of it, obviously, is that the clearly established law here is the Fourth Amendment violation. So I guess I'm having a hard time finding... There's no real doubt about the clearly established law. Garner makes clear that you can't shoot individuals who are running away, not posing a threat, and all of that. The only question is, on these facts, was the use of this force appropriate under the Fourth Amendment? Right. Once you shift into that, that becomes a merits determination. Why should you block discovery at that point? Because qualified immunity protects them from discovery. That's the whole point of qualified immunity. The facts in the record at the time that they moved for qualified immunity, it is, as I understand it anyway, everything freezes, and that's appropriate. That's the point of the protection of qualified immunity. If he had moved for... If Officer... Agent McFarland had moved for summary judgment, had not mentioned the word qualified immunity, and had said, this was a lawful use of force under the Fourth Amendment, should discovery have been stated? I think the court could have exercised its discretion to stay discovery. Think of Clinton v. Jones says that the court has broad discretion, and this is what the district court cited actually in its decision to stay discovery. It said, as a broad matter, Clinton v. Jones, we get to manage our dockets. And if there is a pre-discovery motion for summary judgment, if we have to look at the burden on the non-moving party, we also have to look at the likelihood that this dispositive motion will be granted. So it is not a bar to granting a summary... To granting a stay pre-discovery. It can in the appropriate case. So even in those circumstances, on this record, I think that Agent McFarland could have sought a stay. If anybody in a Federal Tort Claims Act case moves pre-discovery summary judgment against you, I bet you would be screaming, screaming if the court blocked discovery and told you respond to that summary judgment motion without discovery, and then ruled in favor of the plaintiff on the FTCA claim without you having discovery. You'd be up here arguing pretty extensively, I would think. I agree, except for one thing. That would be if I didn't have a full report giving me all the detailed facts from a forensic... You're assuming full. I beg your pardon? You're assuming full. The discovery process is meant to make sure that everything is there. You and Mr. Fuchs and everybody on that side, just like Mr. Cook on the other side, is an advocate. Correct. Your job, of course, is not to mislead, but it's to shape and to present things in the light most favorable to your client and be an advocate and present a point of view and a preferred destination for the court to reach. And it's the other side's job to find out whether or not that is skewed in any way factually or legally. Right. They were prevented from doing that in this case as a factual matter. That just seems flat out wrong to me. I understand the Rule 56D argument. That's a separate argument. But I don't understand the blanket stay of discovery when summary judgment motions are filed. I just don't understand that. Again, Your Honor, it's really— and I'm not trying to avoid the question. It's really impossible to look at this case in a vacuum without the layer of qualified immunity. That's what makes this different. Once that defense is asserted, Supreme Court has said, this court has said, the thumb is on the scale. Not just the thumb is on the scale. Generally speaking, it's not an abuse of discretion to stay discovery. That's the whole point of qualified immunity. This is not a case where you say— You don't get to— Did Agent McFarlane— I know this is not your side of the case, but he presented affirmative evidence, a declaration or affidavit about what transpired, right? He had a sworn statement to the FBI investigator, correct. Which he submitted. Right. In support of his summary judgment motion. That's right. Right? And yet he couldn't be deposed about that statement. That's right. It had to be taken as true. He was not deposed about that statement because it's a qualified immunity case. Every case is different. It's not an FTCA case. You're right, I would— I don't think I'd be screaming, but I would be here pounding the left turn saying, I get discovery. Very different case. Of course, because his affidavit goes beyond the four corners of the complaint. Right? It does. But again, this is a qualified immunity case. And I'm not trying to— It makes it different, Your Honor. And I would urge the court, Harlow, Halbert, the other cases that we've cited, Garner, all of those talk about why it is different and why it is not just appropriate to issue a pre-discovery stay. But it is often the correct thing to do to preserve the protection of qualified immunity. We're not trying to hide anything. And this is a case where not only is it qualified immunity, but it happens in this case. And there was a good faith motion— Pardon? Marlin opposed the Rule 56— Pardon me? —2 on the ground that it wasn't procedurally properly filed. And I'm glad you raised that because— It was opposition about discovery at every point. And that is because he is entitled to the benefit of qualified immunity. And this was not just on a technicality that the Rule 56— Why did they move for dismissal on the basis of a complaint? On the basis of qualified immunity? The policy underpinning qualified immunity is to let the officer out as soon as possible. At the earliest possible— Right. So the first step usually is move to dismiss the complaint— Correct. —on the basis of qualified immunity. Right. And there's no discovery. Okay. Of course there's none. You go on the complaint. But once the complaint is basically accepted and you move for summary judgment, that's what Judge Jordan is driving at. It puts the case in another posture. I understand. I understand what you're saying. Totally. I don't think— As a matter of fact, the officer who wants to be declared immune by moving for summary judgment is postponing the immunity decision until that's ruled on. But also— I speak for myself. It's mind-boggling to me that instead of filing a motion to dismiss, you file a motion for summary judgment, which is the same thing as a motion to dismiss, except you're including some affidavits or whatever it is. I can't compute with that. I've been on the bench over 50 years and I've seen nothing like it. I'm not saying some of these cases aren't out there. Okay. But I think they're just dead wrong. Well, again, Your Honor, on the qualified immunity point, I mean, this is—you take that this is a qualified immunity case, and then you take the record that we had. You got a record that might be impeached. We don't know because you got to depose the parties. Not in a qualified immunity case, Your Honor. Oh, yes. Well— Not always. Not always. And that's part of the benefit. I mean, that's ultimate. That's the ultimate burden. And that's unconscionable. Let's say that the— Let's say that the dismissal— That means that the record that was put in has got some heightened probative value. Your Honor, I don't— You know the rule that says that? No, Your Honor, and I'm not— Let's suppose— Let's suppose that you filed with just some affidavits. Okay. But no affidavits from the parties involved in the shooting, of course. Is that it? Is that the end of it? No. No, that's not the end of it. And I could see cases where it wouldn't be an abusive discretion in a qualified immunity case to allow discovery to go forward for that very reason. So the difference is the fact that you had a report filed. It's not just the report. Well, you had an autopsy and all the rest. Photographs. Yeah. Forensic evidence. Your argument is that's so heightened that it has to be accepted. That's not the argument. The argument is that is sufficient if the state, as happened here, can't say, no, that—other than just saying, I don't believe in fingerprints. I don't believe in DNA. I don't believe in pictures. You can't just say that to defeat qualified immunity and get discovery. That would eviscerate qualified immunity. Okay. Thank you.  Thank you very much. All right. Thank you, Your Honor. This is a dead board. Mr. Officer. Indeed. May it please the court. My name is David Officer. I represent Massachusetts State Troopers Joel Gagne and Curtis Sinelli. Your Honor, our motion to dismiss was allowed.  It was a motion to dismiss. The allegations against the troopers were that there was an unlawful seizure, that they failed to intervene, and there was some theory about them conspiring. I'd like to look at those individually. But before I do, I think I would let a pitch go by that I have to take a swing at and say that arguments have been waived because as to Sinelli and as to Gagne and the initial brief, there was nothing in that brief about Gagne and Sinelli and the claims against them. It was about McFarland, the shooter. It was about whether they should have discovery, but they utterly failed to address the motion to dismiss that was filed on behalf of Gagne. I think all of the arguments in Mr. Cook's brief are directed toward the shooting incident itself and the people who were allegedly directly involved in that shooting incident and the discovery issues that are related to it, but not anything else. I think I agree with you. Thank you, Your Honor. First, in going on to what seems to come in the reply brief, it seems that they emphasize a conspiracy, but they don't put the facts together correctly in support of that. They didn't plausibly allege an agreement to violate rights because if you'll recall, Sinelli and Gagne show up the day of the investigation and they interrogate Mr. Todeshev. The complaint is that in April and early May, the FBI or someone within the state of Florida had started a campaign to harass Mr. Todeshev, to arrest his girlfriend, to all those kinds of things. All of those, they don't make any link of any of that activity back to two Massachusetts state troopers. Two Massachusetts state troopers were here to investigate a Waltham triple homicide years before. They were not here to investigate the Boston Marathon bombing. That's why they came to speak with Mr. Todeshev. So they really don't make a claim of any kind of agreement or any supportable claim that there was an agreement to violate rights and it was a conspiracy. Secondly, the right that they claim was violated was that he was unlawfully seized. The fact of the matter is that the interrogation at Mr. Todeshev's request was held in his apartment or an apartment of a friend. They came to him. He brought a friend and the closest they get to any kind of seizure, I guess, is the fact that Cinelli and McFarland are cautious and they follow Mr. Todeshev wherever he goes in the apartment. That doesn't cut it. If you studied in the case law, that is not a sign of a seizure. That is police officers being wary and being protective of their safety while they're interviewing a person in his own home. The fact of the matter is there was an open door. He could have left at any time and he didn't. Third, they bring a glancing claim at a failure to intervene. Your Honors, Mr. Gagne, Trooper Gagne was outside when the shooting occurred. I don't care what they say about text messaging. We understand the facts. Oh, yes. So I don't see how he could have intervened, Your Honor. That is in the case law supports that. We've read everything. So Gagne's outside. He doesn't have an opportunity to intervene. And Cinelli's inside. But this thing happens. The only facts out there show that there was a table flipped and next thing you know, Mr. Todeshev has assaulted an officer, doesn't show his hands, McFarlane shoots him. There was no time, even if Cinelli believed that there was a violation of rights going on, there was absolutely no time, even under the plaintiff's theory. There was no time for him to intercede. All right, Mr. Officer. Thank you very much. Thank you. Mr. Cook, you have your time for rebuttal. Thank you, Your Honor. First of all, addressing the FTCA claim, we did recede on the negligence theory and we basically relied on the battery theory. And as the court and I think the opposing counsel have argued, the battery rises or falls with the excessive force in the constitutional claim. But their argument is also, in addition to that, that under Florida law, which the FTCA incorporates, for lack of a better term, a battery is intentional. Yes. Under Florida law and you can't sue the government under the FTCA, generally speaking, for an intentional force. Well, my understanding is that in the case of a law enforcement officer, it is possible to do that under FTCA. Okay. However, so the opposing counsel have gone far outside the record to claim that we had lots of documents that we never got. For instance, I think they put in their brief a link to a Boston Globe article where they revealed some of the things in some of the affidavits. We never had that. We never had autopsy photographs. The state attorney's report had some more than 100 pieces of records or documents that we didn't get or maybe we got two dozen of them heavily redacted. I think it's emblematic of the lack of symmetry in the discovery process that the first time that Agent McFarlane filed as an exhibit his statement to the FBI investigator, there were 77 redactions in that statement. Later in the process when he needed to provide more information, that 77 redactions were reduced to three. One of the things I think that mandate discovery is where the information necessary to prove the case is peculiarly within the possession or control of one of the parties. They had video. They had autopsy photographs. They had a document which they purport to have been a confession. The video was what? Part of the interrogation or the interview before the shooting? Parts of the interrogation is what I understand. They say that it stopped and started, but there's no quantification about what parts of the interrogation were recorded. That bears down on our ability to even show whether there was a failure to intervene. We felt that it was really important for the court to recognize the fact that there was a gunpoint arrest and search and seizure of property and interrogation of Mr. Todeshev on April 21st, and it is not that the state officers were present for that. It is that that would have bared on his whether he felt free to leave, and if the officers knew what happened, and if he knew the impunity with which they would restrain his freedom, then I think that that certainly bears on the unlawful detention and possibly on the failure to intervene. Certainly, there are failures to intervene that involve people who are at a distance, for instance, in the Priester v. City of Riviera Beach. I believe there was a failure to intervene at a distance. The person could not have laid hands on the officers that were acted improperly. The 56D, of course, eventually we did do a proper 56D. It was before the… You're familiar with 56D? Yes, sir. The only other thing is there's a Henson case which makes the point that where the only witness is the officer, I think that the quote is, we will not rely on the officer's statement alone, and so I think that in those circumstances, discovery was absolutely necessary. This court should, I believe, remand this case back to the district court for a full course of discovery. All right. Thank you very much. Thank you all. We appreciate it. We're in recess until tomorrow morning.